UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>STEVE LOU | No. 05 CR 514<br><br>Judge Thomas M. Durkin |

**MEMORANDUM OPINION AND ORDER**

Steve Lou has filed a motion for early release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). That motion is denied.

**Background**

A jury found Steve Lou guilty of one count of conspiracy to distribute, and to possess with intent to distribute, approximately 423.8 grams of methamphetamine. In addition to the guilty verdict, Judge Castillo found by a preponderance that Lou had committed a prior drug offense in Oklahoma involving 1,508.9 grams of methamphetamine, despite Lou having been acquitted on that charge. The 423.8 grams had a concentration of 93 percent, and the 1,508.9 grams had a concentration of 99 percent. These facts increased Lou's Guidelines range to 360 months to life in prison.

Lou failed to appear at his sentencing on February 17, 2009. Twenty months later, on November 3, 2010, Judge Castillo sentenced him *in abstentia* to 20 years in prison, which was 120 months less than the low end of the Guidelines range.

Lou had been a fugitive for more than nine years when on March 5, 2018 he was arrested after a traffic stop. While a fugitive, Lou and his girlfriend, Judy Leung,

had a son, Jaylen, who was born in 2012. Tragically, Judy committed suicide on September 1, 2021. Jaylen now lives with his maternal grandparents who have become his legal guardians.

In the wake of this terrible event, Lou filed a pro se motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). In addition to his girlfriend's death, Lou argues that he should be released because of the risk of infection with COVID-19 and the harsh prison conditions he has experienced as a result of the pandemic.

The availability of vaccines and anti-viral treatments for COVID-19 means that it is, for the most part, no longer an extraordinary and compelling circumstance justifying early release. *See United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release"). In any event, the government points out that Lou did not administratively exhaust these COVID-based complaints. The Court appointed counsel from the Federal Defender to prepare a reply brief on Lou's behalf, and in that brief, Lou does not dispute that he never administratively exhausted his claims for release based on COVID. By contrast, the government concedes that Lou has satisfied the exhaustion requirements for his motion to be released to care for his son. So that is the only claim at issue on this motion.

## Analysis

"Section 3582(c)(1) permits a district judge to release a prisoner (subject to revised terms of supervised release) if the judge finds 'extraordinary and compelling

2

reasons' for that step, and the judge also has considered any applicable policy statement of the Sentencing Commission and reviewed the criteria of § 3553(a) 'to the extent that they are applicable.'" *United States v. Ugbah*, 4 F.4th 595, 597 (7th Cir. 2021). The Seventh Circuit has held that the Sentencing Commission's policy statement regarding reduction in term of imprisonment is not "applicable" to a prisoner's request (as opposed to a request from a warden) and so does not "curtail a district judge's discretion." *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). Nevertheless, the Seventh Circuit also held that the policy statement provides "a working definition of 'extraordinary and compelling reasons,'" such that it can "guide discretion without being conclusive." *Id.* And "a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused." *Id.*

## I. Extraordinary and Compelling

With this warning in mind, the Court notes that the policy statement explains that an "extraordinary and compelling reason" for early release can be found in circumstances of the "death or incapacitation of the caregiver of the defendant's minor child." U.S.S.G. 1B1.13, cmt. n. 1(C)(i). The government argues that this provision applies "only where the defendant is the only available caregiver." R. 170 at 18. The government contends that the fact that Lou's son's maternal grandparents are now his legal guardians means that Lou is not the only available caregiver.

Contrary the government's argument, the provision contains no such limitation. A related provision concerning the "incapacitation of the defendant's

3

spouse or registered partner" is expressly limited to circumstances "when the defendant would be the only available caregiver for the spouse or registered partner." *See* U.S.S.G. 1B1.13, cmt. n. 1(C)(ii). But there is no analogous limitation with respect to caregivers for minors.

Some courts have found that such a limitation is implied. In determining whether the death of a caregiver constitutes an extraordinary and compelling circumstance, these courts examine whether the "available" caregivers are too old or sick or otherwise unable to competently care for the child. *See United States v. Simmons*, 2021 WL 5074741, at *5 (D.D.C. Nov. 2, 2021) (citing cases); *see also United States v. Pearson*, 2020 WL 7706618, at *4 (E.D. Mich. Dec. 29, 2020) ("And this Court [finds that it should] consider the availability of a suitable alternative *family member* to care for a defendant's minor child when deciding whether extraordinary and compelling circumstances exist to release the defendant. Otherwise, courts would have to consider releasing every incarcerated single parent."). In other words, most courts find extraordinary and compelling circumstances only when foster care is the only other alternative.

That analysis ignores the express terms of the provision. It is the death or incapacitation of the caregiver that is extraordinary and compelling, not only the threat of foster care. Adding such a limitation ignores the terrible nature of losing one parent or caregiver to incarceration, followed by losing another to death. The extraordinary and compelling nature of such circumstances arises not simply from the fact that an incarcerated single parent must leave their child with a new

4

caregiver. It is the subsequent death of the second caregiver that is undeniably extraordinary and compelling. This is even more so true here where the death is a suicide. Therefore, the Court finds that this case presents an extraordinary and compelling circumstance.

## II.    3553(a) Factors

In addition to there being an "extraordinary and compelling" reason for release, the Court must find that Lou's release would comport with the factors in § 3553(a). Those factors "require courts to consider both utilitarian and retributivist principles in imposing sentences [such that] defendants should receive sentences of adequate length relative to the severity of their crimes, and also long enough to make them examples to others who consider committing similar crimes." *United States v. Rainone*, 09 CR 206 (N.D. Ill. June 19, 2020), R. 180 at 6. Consideration of these factors can demonstrate that release is inappropriate even under extraordinary and compelling circumstances. *See, e.g., United States v. Rogers*, 2020 WL 4816053, at *2 (N.D. Ill. Aug. 18, 2020).

The primary concerns implicated by the 3553(a) factors here are that Lou was a fugitive for ten years and that he has served, at most, only about 50 percent of the time he is anticipated to be incarcerated. Lou argues that the Court should account for the 23 months he was detained in Oklahoma for conduct that enhanced his sentence here, which would mean he has served 83 months. To the extent that Lou is correct that his original sentence did not account for the 23 months, this is a reasonable request. But even giving him that benefit, Lou's 83 months is only 35

5

percent of his original 240-month sentence. The Bureau of Prisons currently lists Lou's anticipated release date—which accounts for good time credits—as March 3, 2032, or 108 months from now. That means that Lou's 83 months incarcerated (including time detained in Oklahoma) is still only 49 percent of the 168 months he is anticipated to serve.

It is simply unjust to order Lou's release having served such a small portion of his original sentence and anticipated time incarcerated. Permitting Lou to serve only 50 percent of his anticipated time incarcerated would diminish the seriousness of the offense and respect for the law and undermine its deterrent effect. Even if Lou had served 60 or 70 percent of his anticipated time incarcerated, the Court cannot say that would be sufficient.

In this case, it would also create the appearance of rewarding a defendant who was a fugitive for almost ten years. Lou speculates that his failure to appear at sentencing caused Judge Castillo to increase Lou's "punishment well beyond what it would have otherwise been." R. 183 at 15. And rightly so. Besides being in blatant contempt of a court order, failing to appear for sentencing and a period of incarceration creates unnecessary work and danger for law enforcement. While it appears that Lou surrendered peaceably once he was caught, that can never be assumed. Enforcement of warrants often leads to violent circumstances, whether intended or accidental. For these reasons, any enhancement to Lou's sentence caused by his failure to appear was appropriate and is not deserving of reconsideration or

correction. And in any event, it is not at all clear that Lou's failure to appear resulted in a higher sentence, as his sentence was 120 months below Guidelines.

Next, Lou makes several arguments that much of the law that enhanced his sentence is likely to change in the future. Specifically, he argues that Congress may soon ban sentencing enhancements for acquitted conduct. He also contends that fear of a "methamphetamine epidemic" led to unreasonable sentencing guidelines that were out of proportion to those for other illegal narcotics. And he points out that some "courts have criticized the Sentencing Guidelines' decision to provide for dramatically increased sentences whenever the purity of the methamphetamine at issue exceeds 80%," as being based on an erroneous "assumption that purity reflects a defendant's culpability or role in an overall criminal hierarchy." R. 183 at 17.

These arguments would carry more weight if Lou had been given a sentence within or above the Guidelines. As discussed, however, Judge Castillo gave Lou a generous sentence that was 120 months below the Guidelines range. Such a departure already accounts (whether intentionally or not) for many of the arguments Lou makes here. Decreasing his sentence to only 50 percent of a sentence that was already 33 percent below the bottom of the Guidelines range fails to reflect the seriousness of the offense as currently contemplated by the relevant law.

Lou points out that his co-defendant received a significantly lower sentence of 21 months. Lou, however, concedes that "there were some significant differences between Mr. Lou [and his co-defendant]." R. 183 at 23. These differences include the fact that Lou "may have had some authority over [his co-defendant]," Lou went to

7

trial and testified, and his prior conduct in Oklahoma. *Id.* Most important, Lou did not show up for his sentencing. All these reasons explain the disparity with respect to his co-defendant such that the disparity is not a basis to justify Lou's early release.

Lastly, Lou argues that his lawful lifestyle while he was a fugitive (aside from being a fugitive) and his exemplary conduct during his incarceration demonstrate that his risk of recidivism is low. He argues that his drug dealing activity was a blip in between his previous life in the Marines and the law-abiding life he has lived since his son was born. His military service was something Judge Castillo was aware of at sentencing. Furthermore, the assertion that he led a law-abiding life after his son was born ignores the fact that he violated the law every day he was a fugitive. He never turned himself in; he had to be captured. Quite simply the time Lou has already served is not significant enough to provide just punishment for his offense.

## Conclusion

In sum, despite the compelling circumstances presented here, decreasing Lou's sentence by 50 percent when it was already 33 percent below the Guidelines range is an unjust result. Therefore, Lou's motion for early release [163] is denied without prejudice.

ENTERED:

*Thomas M Durkin*
_____
Honorable Thomas M. Durkin
United States District Judge

Dated:  March 14, 2023

8